MAMIE HARRIS, PLAINTIFF, v. DOROTHY EMORY, DIREC-
TOR OF WELFARE, CITY OF PLAINFIELD, N. J., DE-
FENDANT.

Juvenile and Domestic Relations Court
Union County

December 5, 1975.

200

*Ms. Patricia F. Breuninger,* appearing on behalf of the Union County Legal Services, attorneys for plaintiff.

*Mr. Lawrence Vastola,* for defendant (*Messrs Crane, Beglin and Vastola,* P. A., attorneys).

BERCIK, P. J. J. D. R. C. Plaintiff brings this action pursuant to *N. J. S. A.* 44:1–86, which provides a summary procedure for obtaining a judicial review of the decision of the Director of Welfare in an individual case:

The director of welfare * * * shall determine who are to be relieved by him, subject to an application by any person * * * to the juvenile and domestic relations court * * * applying for a summary review and determination by the court of the action of the director as to the extent and amount of relief, if any, to be rendered.

Mamie Harris, a welfare recipient, petitions the Union County Juvenile and Domestic Relations Court to review the action of the Director of Welfare of the City of Plainfield reducing her public assistance grant to $69 a month. She contends that such amount is inadequate to provide for her basic needs of food and shelter, thereby exposing her to unnecessary suffering, contrary to *N. J. S. A.* 44:8–122, and she requests this court to order that her monthly assistance payment be increased to $242.50.

Plaintiff has no income other than her public assistance grant. She is a widow, residing in a two-bedroom apartment with two adult sons. Most weekends she cares for her institutionalized retarded daughter. None of her children

contribute toward meeting the household expenses. One son, aged 19, is unemployed and receives $69 a month public assistance in his own name; another son, James, aged 30, is a full-time college student. All of the $65 a week which James earns working part-time is applied toward the cost of his education, and defendant admits that this money is unavailable to plaintiff.

Plaintiff is classified as employable, capable of light to moderate work despite a medical condition limiting her strength and endurance. In the past she has worked as a domestic, but she now believes her health to be too poor to resume such activity. She testified that all attempts to find alternate employment have been unsuccessful.

Plaintiff applied to the City of Plainfield for public assistance in December 1974, following the termination of county welfare benefits upon her son's graduation from high school. She was awarded a grant of $163 for herself and one child, which grant was reduced to $138 a month in March 1975 after the Plainfield Welfare Board became aware that her other son, James, also lived with her. When her youngest son became employed in August 1975 Plaintiff's grant was further reduced to $69 a month. The grant was continued at this level even though her son's employment terminated shortly thereafter. Defendant or her representatives informed plaintiff that her son would be required to apply for assistance in his own name.

Plaintiff submitted an itemized affidavit listing monthly expenses of $242.50, which figures defendant stipulated are reasonable. Defendant maintains, however, that the stipulation merely acknowledged the general reasonableness of the expenses and is not conclusive on the issue of plaintiff's individual needs since the items include costs chargeable to the emancipated children. Plaintiff denies that her expenses would be lowered if the children were to leave home and reside elsewhere.

Defendant testified that it is the stated policy of the Plainfield Welfare Board to limit public assistance grants

to the schedules of maximum assistance allowances prepared by the New Jersey Department of Institutions and Agencies, Division of Public Welfare in its § 2.300A, General Assistance Budget Manual (Manual), for statewide use by municipal welfare directors, and that each reduction of plaintiff's grant was consistent with that policy.

Plaintiff bases her claim for increased aid on the provisions of the General Public Assistance Law, *N. J. S. A.* 44:8–107 to 145. She contends that she is a "needy person," as that term is used throughout the statute, and therefore entitled to receive whatever aid is necessary to protect her well-being and provide for her basic needs, specifically $242.50, the amount required to meet her monthly expenses. Plaintiff further contends that even if the statute is construed to permit defendant director in her discretion to award a lesser sum, defendant abused that discretion by arbitrarily limiting the grant to the figure suggested in the Manual solely to minimize the cost to the city, without regard to plaintiff's actual needs.

Defendant testified that she considered it of the utmost importance that employable persons receiving public assistance not be encouraged to depend on their grant for extended periods of time, and she defended the Manual's maximum grants as being consistent with this incentive policy. The Manual provides a certain limited incentive to work, in that it exempts from the gross income of the applicant $60 a month, plus one-third of any additional income.[1]

I

The court, in reading the pertinent section, finds that the act never expressly defines who is a "needy person," but it is clear that financial need alone is not enough. To

---

[1] The gross income figure of a recipient is important because the aid will be reduced proportionately to any increase in gross income. However, the first $60 does not reduce the size of the grant at all.

be eligible to receive "public assistance" under this act, the needy person must demonstrate that such need is not self-created. *N. J. S. A.* 44:8–108 defines "public assistance" as:

\* \* \* assistance rendered to needy persons \* \* \* where such persons are willing to work but are unable to secure employment due either to physical disability or inability to find employment. \* \* \*

*N. J. S. A.* 44:8–109 states the public policy underlying the act:

\* \* \* every needy person shall \* \* \* be entitled to receive such public assistance as may be necessary, and that the furnishing of such public assistance is primarily the duty of the municipalities \* \* \* and that all needy persons not otherwise provided for under the laws of the State shall \* \* \* receive public assistance pursuant to \* \* \* this act.

In function the statute serves as a backstop to ensure that needy persons who fail to qualify for categorical assistance under the more selective programs of *Title* 44 of the *Revised Statutes* will still be able to turn to the municipality for help.[2]

*N. J. S. A.* 44:8–122 provides that the Director

\* \* \* shall render such aid \* \* \* as he may in his discretion \* \* \* deem necessary to the end that such person may not suffer unnecessarily, from cold, hunger, sickness, or be deprived of shelter pending further consideration of the case.

In *N. J. S. A.* 44:8–124 we find that "continued" assistance is to be provided

\* \* \* in such a manner as to meet any or all of the several needs of, or as may be necessary· to protect the well-being of, the person or persons to whom assistance is to be granted such as the provision of food, milk, shelter, fuel, clothing or medical care \* \* \*.

---

[2]For a detailed discussion of the difference between the General Public Assistance Law and the categorical aid programs established under the rest of *Title 44, see East Orange v. McCorkle,* 99 *N. J. Super.* 36 (App. Div. 1968).

Plaintiff insists that the controlling criterion in these sections is the individual applicant's "need," and that the best measure of a person's need is such person's own expenses if, as in the instant case, the Director has examined these expenses and found them reasonable. Since each item on her affidavit is a "basic" item, plaintiff argues that to deny her sufficient assistance to meet all these expenses is to expose her to unnecessary suffering, contrary to *N. J. S. A.* 44:8–122 and jeopardize her well-being, contrary to *N. J. S. A.* 44:8–124.

The statutes state that every award of public assistance is within the "discretion" or "judgment" of the Director. *N. J. S. A.* 44:8–122, 123. Moreover, the Director is expected to make a monthly re-evaluation of all such grants in order to revoke or alter them as the applicants' circumstances change. *N. J. S. A.* 44:8–118(b).

It would be a radical distortion of the legislative intent to say that these decisions, which may be made only after the Director has investigated each application fully, *N. J. S. A.* 44:8–121 to 123, are merely advisory and that the court may substitute its judgment for that of the Director whenever it believes the applicant has demonstrated a need for additional relief.

*N. J. S. A.* 44:1–86 should not be construed to negate the clear intention of the Legislature that the granting of public assistance is a matter best left to the expertise and discretion of the Director. This court should not overrule the decision of the Director in a specific case unless it can be definitely shown that the Director has abused that discretion through arbitrary or capricious treatment of such person's application for assistance. *Lawson v. Tighe,* 19 *N. J. Misc.* 375, 20 *A.* 2d 356 (J. D. R. Ct. 1941). *Higdon v. Boning,* 121 *N. J. Super.* 276 (J. D. R. Ct. 1972), is consistent with this limited scope of review.

Assuming that plaintiff can demonstrate that she is a needy person within the scope of the General Public Assistance Law, what is the measure of assistance to which she

is entitled? Plaintiff insists that her assistance must be equal to her need and that her need must be equated with her expenses. Applying such a theory, defendant's refusal to increase her aid was an error of law which may be corrected by this court. *Higdon v. Boning, supra.*

The act specifically places all awarding of assistance within the discretion of the Director, *N. J. S. A.* 44:8–123, and to accept plaintiff's reading would be to severely restrict defendant's exercise of that discretion. The practical effect of such a construction would be to shift the discretion from the Director to the applicant, once initial eligibility has been determined. It is not up to the applicant to decide what expenses are basic and reasonable to effectuate a policy of a municipal welfare department. It is the Director's duty to make policy. Moreover, the fact that plaintiff's expenses may be reasonable does not mean that plaintiff is not otherwise provided for within the meaning of the act and the rules and regulations of the Manual, and that the policy of the defendant causes unnecessary suffering.

Plaintiff's expenses are certainly relevant factors for the Director to consider in fixing the size of the award, but they are not conclusive. *N. J. S. A.* 44:8–121 requires defendant to inquire as to:

> * * * the facts, conditions and circumstances of the case, including legal residence, *family connections, living conditions*, resources, income, and causes direct and indirect of the person's need. * * * [emphasis supplied]

Defendant testified that two factors other than expenses were important in reaching her decision as to plaintiff's grant. One factor was defendant's belief that plaintiff could generate income if she wished to do so from some light employment. A second factor which defendant states influenced her decision was the residence of the two sons of plaintiff in her home. Defendant contends that it was proper for her to conclude that these persons should be contributing to the expenses of the household.

Plaintiff cites *Hausman v. N. J. Dept. of Inst. and Agencies,* 64 *N. J.* 202, 208 (1974), for the proposition that defendant is prohibited from reducing her grant merely because her sons are not contributing as defendant feels they are morally obligated to do. Plaintiff may be correct in her contention that the rationale of *Hausman* is appropriate for grants of public assistance as well as assistance for dependent children under *N. J. S. A.* 44:10–1 *et seq.,* but that does not mean that defendant may not consider the sons' income for any reason merely because they are not contributing. *Hausman* speaks to the contribution of "noneligibles," and in this case the younger son is eligible and currently receiving assistance from the City of Plainfield.

█ Because defendant is expected to consider factors other than expenses in computing plaintiff's grant, it is the opinion of this court that defendant did not automatically err by awarding a sum of less than $242.50.

## II

█ What must now be determined is whether or not defendant has abused her discretion to award a lesser sum by her action in reducing plaintiff's grant to $69.

There is no dispute that defendant has at all times followed the Manual with respect to the amount of assistance granted plaintiff. The original $163 grant represented the maximum for two eligible persons in a household of two, the $138 was for two eligibles in a household of three and the $69 was for one eligible in a household of three. Defendant testified that she agreed with the decision of the Plainfield Welfare Board to adhere to the Manual's suggested levels of assistance; therefore, for the purposes of evaluating whether such adherence constituted an abuse of discretion, that policy shall be attributed to defendant as an independent exercise of her discretion.

The State is authorized to prescribe rules and regulations for the municipalities under *N. J. S. A.* 44:8–111:

* * * (d) Promulgate, alter and amend from time to time such rules, regulations and directory orders as may be necessary for the administration of State aid and for the carrying out of any provisions of law regulating the same and of the provisions of this act, *which rules, regulations and orders shall be binding upon the various municipalities;* .

\*    \*    \*    \*    \*    \*    \*    \*

* * * (f) Formulate, promulgate and enforce standards for investigation, *allowance* and supervision of grants for public assistance and forms and procedures necessary to the proper administration and recording thereof. * * * [Emphasis supplied]

If the municipality wishes to be reimbursed by the State for up to 75% of the public assistance program's costs, *N. J. S. A.* 44:8–129, then it must comply with those procedures and regulations. *N. J. S. A.* 44:8–112(d) authorizes the Commissioner to withhold this state aid if the regulations are not followed. However, the schedule of maximum assistance payments is not binding on the municipality to the same degree that the procedural regulations are. On page 1 of the Manual it is made clear that maximum allowances are only suggestive:

If * * * the actual payments to or for such cases exceeds [sic] maximum assistance allowances permitted under the regulations in this Manual, it shall be incumbent upon the municipality to bear the costs of such "overpayment",

If the Director of Welfare feels that a greater amount of aid is necessary to prevent unnecessary suffering, then the Director can, in her discretion, institute such a policy.

In the instant case, while it might not be necessary for defendant to use the Manual to fix aid levels, this court cannot say that the defendant abused her discretion in so doing. *N. J. S. A.* 44:8–124 states that "the extent of individual grants shall be determined in accordance with the standards and budgets authorized by the commissioner." Even the most liberal reading of this section would indicate that the Legislature intended and expected that the Director of Welfare would rely on the regulations to determine individual

grants, although it would be within her discretion to disregard them in exceptional cases.

It is not controlling, as plaintiff suggests, that the principal reason why defendant follows the regulations is to minimize the cost of public assistance to the City of Plainfield by fixing aid levels so as to receive maximum reimbursement as state aid.

If the treatment of plaintiff's application can be considered valid within the scope of defendant's discretion, then the reviewing court must accept that decision regardless of any additional underlying considerations.

The original application to this court was made in August 1975. In October 1975 plaintiff filed a supplemental application for emergency assistance pursuant to section VIII of the Manual, requesting an emergency payment of $504.70 to pay three months' arrears in her rent after the landlord instituted eviction proceedings against her.

On October 6, 1975, after a hearing, a consent order was filed in this court stating that defendant had approved plaintiff's application for emergency aid in the amount of $504.70.

The court has computed that the amount of assistance given to the plaintiff for August, September and October 1975 was $711.60. During that period the 19-year-old son received $138 in assistance, for a total of $849.60 in public assistance paid to plaintiff's household. It is true that the bulk of this aid was in the form of emergency assistance rather than "continued assistance" within *N. J. S. A.* 44:8–124.

Plaintiff argues that eligibility for emergency assistance is much less inclusive than for general assistance, and there is no protection for plaintiff under this section, since separate applications must be made each month.

But the public assistance program was not designed to provide a secure income for needy persons. It offers a means whereby the municipality can give assistance to those individuals who are either unable to care for themselves due

to physical or medical disability or temporarily unable to support themselves and their families because they are out of work. Defendant testified that she believed assistance levels should not be set so high as to destroy the incentive to find employment by encouraging a dependency on public assistance. Defendant testified that it is a policy of her department to discourage continuing dependency on public assistance by able-bodied persons, and that the assistance offered to plaintiff is consistent with that policy.

The court finds that the defendant was within her discretion in fixing plaintiff's continuing public assistance grant at $69 a month and in handling the delinquency in the rent as an emergency requiring an application for emergency assistance. Such a procedure is consistent with the statutory purpose of avoiding unnecessary suffering. Whether a refusal by defendant to provide emergency assistance at some future date where plaintiff is faced with a similar emergency would justify a finding of an abuse of discretion is a question not properly before this court at the present time.

Therefore, plaintiff's request for an order directing that defendant Dorothy Emory, Director of Welfare for the City of Plainfield, increase plaintiff's public assistance grant is hereby denied.